UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEBORAH O'CONNOR,  :
INDIVIDUALLY AND ON BEHALF  :
OF ALL OTHERS SIMILARLY  :
SITUAED  :
    PLAINTIFF,  :
                                                          : CIVIL ACTION NO. 3:08cv1703 (VLB)
                                                          :
v.  : JANUARY 4, 2012
                                                          :
AR Resources, Inc.  :
    DEFENDANT  :

## MEMORANDUM OF DECISION APPROVING CLASS ACTION SETTLEMENT, ATTORNEY'S FEES AND CLASS REPRESENTATIVE FEES

Before the Court is Plaintiff's request for final approval of class action settlement, attorney's fees, and class representative fees. This matter was initiated by a complaint filed on November 11, 2008 by the named Plaintiff, Deborah O'Connor. Plaintiffs allege that AR Resources, Inc. ("AR Resources") engaged in unauthorized collection activity by sending collection letters to Connecticut residents absent license in Connecticut to operate as a consumer collection agency in violation of Conn. Gen. Stat. § 36a-801. By doing so, Plaintiffs allege that AR Resources also violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., in that its unlicensed activity constituted a deceptive means of collecting or attempting to collect a debt In violation of FDCPA §1692e(10), and an unfair means of collecting or attempting to collect a debt In violation of FDCPA §1692f. For the following reasons, the Court approves the proposed settlement, attorney's fees, and class representative fees.

I.      **Background and Terms of Proposed Settlement**

This class action has been brought on behalf of all Connecticut residents from whom Defendant attempted to collect money while not being licensed with the Connecticut Department of Banking as a Consumer Collection Agency. On March 30, 2010, the Court certified the proposed class finding that the requirements for class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b) had been met. *See* [Dkt. #27]. The Court then denied the parties' motion to preliminary approve the proposed settlement agreement and required the parties to submit additional information to enable the Court to determine if the proposed settlement was fair, reasonable and adequate. *See* [Dkt. #27]. On April 5, 2011, the Court entered an order preliminarily approving the proposed settlement agreement, form and manner of notice. *See* [Dkt. # 34]. The Court held a fairness hearing on August 25, 2011. As of that date, no class member objected to the settlement or requested exclusion. Defendant did not object to the requests for attorney or class representative fees.

The class consists of approximately 445 consumers in Connecticut from whom Defendant attempted to collect debts in the year before the filing of the class action complaint. [Doc. # 41, Aff. Of Dora Fernandez, ¶¶4-5]. Of the 445, there were 54 members that were unreachable. *Id.* ¶13. None of the remaining members objected or opted out. *Id.* ¶15. There were 26 timely claim forms submitted and zero untimely forms submitted. *Id.* ¶16-17.

Defendant has agreed to establish a settlement fund of $5,000 for the class members which could be claimed by submitting a claim form. The 26 class

members that submitted the claim form are therefore entitled to a payment of $192.30 each. Additionally, Defendant has agreed that the named plaintiff, Deborah O'Connor, is to receive $2,000 for a class representative fee. Defendant has also agreed to pay Plaintiff's counsel's attorney fees in the amount of $32,000, and has additionally refunded the $1,751.25 that it collected as collection fees to the class members.

      Defendant has also agreed to make a cy pres payment of $500 to the National Consumer Law Center and $500 to the National Association of Consumer Advocates. The National Consumer Law Center is a 501 (c) (3) nonprofit advocacy organization which specializes in consumer issues on behalf of low-income people. The National Consumer Law Center primarily researches consumer law in America and writes books for consumer lawyers and other legal advocates for those of low income. It was founded over 40 years ago and offers training to thousands of legal-service, government, and private attorneys, as well as community groups and organizations representing low-income and elderly people.

      The National Association of Consumer Advocates was founded in 1992 and is a non-profit association of attorneys and consumer advocates committed to representing customers' interests. Its members are private and public sector attorneys, legal services attorneys, law professors and law students whose primary focus is the protection and representation of consumers. National Association of Consumer Advocates also has a charitable and educational fund incorporated under §501 (c) (3).

**Under the FDCPA, there is a statutory limit on the amount a successful class may recover. A successful class may recover damages up to the lesser of $500,000 or 1% of a Defendant's net worth. 15 U.S.C. § 1692K. At the time of the settlement agreement, Defendant AR Resources, Inc. had a negative net worth.**

**III.    Approval of the Settlement Agreement**

*Standard*

Federal Rule of Civil Procedure 23(e) provides that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Rule further provides that:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

*Fed R. Civ. P. 23(e)(1)-(2)*. Thus, to be properly approved, the settlement must provide reasonable notice to class members of the settlement proposal and the settlement must be procedurally and substantively fair, reasonable, and adequate.

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Matheson v. T-Bone Restaurant, LLC*, No.09Civ.4214, 2011 WL 6268216, at *3 (S.D.N.Y. Dec. 13, 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113 (2d. Cir. 2005)).

"To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *Id.* The *Ginnell* factors are:

>(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res.,* 209 F.3d 43 (2d Cir. 2000).

>The Second Circuit has further instructed that:

>A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart,* 396 F.3d at 116-17 (internal citations and quotations omitted).

>*Analysis*

>i.   **Adequacy of Notice**

>Federal Rule 23(c)(2)(B) defines notice requirements for Rule 23(b)(3) classes, *providing* that:

>>the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

    **(i)    the nature of the action;**
    **(ii)   the definition of the class certified;**
    **(iii)  the class claims, issues, or defenses;**
    **(iv)  that a class member may enter an appearance through an attorney if the member so**
           **desires;**
    **(v)   that the court will exclude from the class any member who requests exclusion; and**
    **(vi)  the binding effect of a class judgment on members under Rule 23(c)(3)**

The Second Circuit has further clarified that "[t]he standard for the adequacy of a settlement notice in a class action under either the *Due Process Clause* or the Federal Rules is measured by reasonableness." *Wal-Mart,* 396 F.3d at 113. Further, there are "no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." (internal citations and quotation marks omitted). *Id.* at 114.

Here the notice to the class was reasonable and sufficient to satisfy Rule 23's requirements. On or about May 25, 2011, first class notices which were approved by the Court in its prior order preliminarily approving the proposed settlement were mailed to all 445 class members. [Doc. # 41, Aff. Of Dora Fernandez, ¶6]. Of the 445 mailed, 146 were returned undeliverable after the initial mailing. *Id.* ¶8. However, after further attempts to contact the class members through forwarding addresses and the use of Accurint, an on-line person tracking service, all but 54 class members were reached. *Id.* ¶¶8-12.

    *ii.*    ***The Settlement was Fair, Reasonable, and Adequate***

        *a. Procedural Fairness*

Here, the settlement was reached after the Plaintiffs conducted a thorough investigation and evaluation of the claims and was the product of an arm's length negotiation between the parties. The parties engaged in significant discovery relating to class size, Defendant's net worth and Defendant's process and procedures for collecting debt within Connecticut which enabled them to evaluate the strengths and weaknesses of their claims. Further, Plaintiff's counsel's practice primarily focuses on FDCPA claims and therefore Plaintiff's counsel has acquired expertise in evaluating the strengths and weaknesses of claims brought under the FDCPA. In addition, the Plaintiff's counsel agreed to reduce the attorney fees sought as a result of the settlement process and in light of Defendant's poor financial condition as confirmed by discovery between the parties. These facts demonstrate that the settlement achieved met the requirements of procedural fairness.

        *b. Substantive Fairness*

            *i. Complexity, expense and likely duration*

Although the present matter is not particularly legally or factually complex, there would still be a significant amount of work and effort to prepare the case for trial. The parties have indicated that it would likely take an additional year before the parties would be ready to try the case. Moreover, the expense of litigating this matter through trial would likely outweigh any potential recovery considering the FDPA's statutory damages cap limiting recovery to 1% of Defendant's net

worth which in this case would be a negative amount. At this juncture, the attorney's fees are estimated to be more than $32,000, which is already well above the proposed settlement, and likely above any recovery that could be obtained at trial. Consequently, this factor weighs in favor of finding the settlement adequate and reasonable.

> ii. *Reaction of the class*

It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. *In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y.2001). The parties have indicated that the reaction of the class has been favorable. There have been no objections or exclusions. "[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988) (internal quotation marks and citation omitted). Accordingly, this factor also weighs in favor of finding the settlement reasonable and adequate.

> iii. *Stage of Proceedings and Amount of Discovery Completed*

When weighing this factor, the Court "need not find that the parties have engaged in extensive discovery … Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citations omitted), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Here, the parties engaged in significant formal as well as informal discovery

related to class size, certification, Defendant's process for collecting debts in Connecticut, and Defendant's net worth including deposing Defendant's designated representative.  Such discovery has enabled the Court to intelligently make an appraisal of the proposed settlement.  Considering that the individual recovery for each class member is less than the statutory maximum each member could have obtained if they pursued their claim individually, the fact that Defendant's net worth is negative would have prohibited Plaintiffs' from recovering statutory damages as a class altogether if the action had proceeded to trial in light of the FDCPA's cap on class action damages.   The confirmation of Defendant's negative net worth through discovery has provided the Court with facts necessary to appraise and find the proposed settlement fair and reasonable.

### iv.  Risks of establishing liability and damages

Here, the parties indicate that Defendant has raised a potentially meritorious defense of bona fide error to its FDCPA liability.  *See* 15 U.S.C. 1692k(c).  The bona fide error defense absolves a defendant debt collector from liability if the debt collector can show by a preponderance of evidence that any violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Here the Defendant collects medical debts and does not collect accounts for any creditors located in Connecticut.  Discovery has revealed that the letters that were sent to class members in Connecticut were sent by a third party vendor on Defendant's behalf and that Defendant was unaware that letters had been mailed to Connecticut residents.  Further, the fact-intensive nature of establishing a

bona fide error defense which would require a showing that the FDCPA violation was not intentional presents risks and uncertainty to either side which the proposed settlement will eliminate.

In addition statutory damages could not be established in light of Defendant's negative net worth if the matter proceeded to trial thus limiting any recovery to actual damages which would be more difficult and onerous to prove. Accordingly, these factors weigh in favor of approving the proposed settlement. As other courts have concluded "given the small amount of damages available in cases brought pursuant the FDCPA, the benefits of immediate recovery outweigh the risks associated with ongoing litigation." *Garland v. Cohen & Krassner*, No.08-cv-4626, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011).

>   *v.   Risks of maintaining the class action through trial*

The parties have not presented any evidence that there is any real or substantial risk that the class will be decertified before the trial. In addition as one court in the Southern District of New York concluded "a contested class certification motion would likely require extensive discovery and briefing. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f) the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process." *Matheson*, 2011 WL 6268216, at *5. Accordingly this factor weighs in favor of final approval.

>   *vi.   Ability of Defendant to withstand a greater judgment*

**Considering that Defendant has a negative net worth, Defendant would not be able to withstand a greater judgment. Even if the law allowed for a greater judgment, which it does not, the parties have indicated that the settlement amount is the greatest that the Defendant could withstand. Further if all of the class members had individually pursued their FDCPA claims against the Defendant, each class member would have likely been unable to recovery the statutory maximum considering the Defendant's poor financial condition. This factor therefore weighs heavily in favor of final approval.**

> vii. *Range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks of litigation*

**The eighth and ninth factors call upon the Court to weigh the range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks of litigation. In doing so, the Court is "called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.** *Grinnell*, **495 F.2d at 462. However, "[i]t is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement. Such procedure would emasculate the very purpose for which settlements are made."** *Id.* **(ellipsis omitted). "The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum … Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the**

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Matheson*, 2011 WL 6268216, at *6 (internal quotation marks and citations omitted).  Here considering Defendant's negative net worth, the statutory cap on class action damages, and Defendant's potentially meritorious bona fide error defense, the Plaintiffs are recovering more than they could recover if the class action proceeded to trial with respect to statutory damages.  Further, the Defendant has disgorged the profit of $1,751.25 that it made when it collected the class members' debt.  Considering Defendant's poor financial condition and its inability to withstand a greater recovery, the proposed settlement amount is reasonable and weighs in favor of final approval.  For the foregoing reasons, all of the *Grinnell* factors support a finding that the settlement is fair, reasonable and adequate.

### IV.     Approval of Attorney and Class Representative Fees

The Court is mindful that the FDCPA mandates the payment of reasonable attorney's fees by the defendant in order to provide attorneys with an incentive to pursue smaller claims.  *See* 15 U.S.C. §1692k(a)(3); *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989).

The Second Circuit has traditionally recognized two distinct methods to determine what is a reasonable attorney's fee.  "The first is the lodestar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.  Once that initial computation has been made, the district

court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (internal citations and quotations omitted). Under the second method, the court sets some percentage of the recovery as a fee. *Id.* The Second Circuit subsequently clarified the proper analysis with respect to attorneys fee in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008) finding that the term "lodestar" was outdated and instead used the term "presumptively reasonable fee." *Id.* at 189-90.

In wage and hour class action lawsuits, which are similar to FDCPA suits in that small claims can often only be prosecuted through aggregate litigation, public policy favors a common fund attorney's fee award. *See Johnson v. Brennan*, No.10Civ.4712(CM), 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011) (noting that "the trend in this Circuit is to use the percentage of the fund method in common fund cases"); *Willix v. Healthfirst, Inc.*, No.07Civ.1143, 2011 WL 754862, at *6 (E.D.N.Y.). However considering that the settlement amount is minimal as a consequence of Defendant's negative net worth, the "presumptively reasonable fee" method as articulated in *Arbor Hill* is more appropriate under these circumstances.

The Second Circuit has noted that "[w]hile the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach

adopted in that case is nonetheless a derivative of the lodestar method." In *Arbor Hill*, the Second Circuit instructed that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 190.

Consequently, courts have described the "presumptively reasonable fee" analysis as a "process" that is "really a four-step one, as the court must: '(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.'" *Vereen v. Siegler*, No.3:07CV1898, 2011 WL 2457534, at *1 (D. Conn. June 16, 2011) (quoting *Adorno v. Port Authority of New York and New Jersey*, 685 F.Supp.2d 507, 510 (S.D.N.Y. 2010)).

In this case, class counsel submitted a detailed bill that contemporaneously accounts for hours worked, which indicates a time expenditure of a total of 162.45 hours at rates between $90 and $325 per hour, for a total fee of $35,197.  [Dkt. #41, Affidavit of Daniel S. Blinn at 3-

28].  Additionally, class counsel billed $3,699.68 in litigation related expenses, for a total of $38,896.68.  *Id.*  As noted above, class counsel discretionarily adjusted the "lodestar" downward and is only seeking $32,000 in fees in light of Defendant's poor financial condition.

    *i.*   *Reasonable Hourly Rate*

In *Arbor Hill*, Second Circuit indicated the relevant factors in determining the reasonable hourly rate were articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d 717-19.

Reasonable hourly rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).  The determination of a prevailing rate requires a 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'"  *M.K. ex rel. K. v. Sergi,* 578 F.Supp.2d 425, 427 (D. Conn. 2008) (quoting *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)).

Attorney Blinn has requested a fee of $325 per hour. In past FDCPA cases in this district over the last four years, Attorney Blinn has routinely been awarded fees between $300-362 per hour. *See, e.g., Hoyte v. Recheck Funnding LLC*, No.3:11-cv-0927, 2011 WL 6004582, at *2 (D. Conn. Dec. 1, 2011) (finding that average fee of $362 per hour to be reasonable and that "based on the Court's familiarity with fee awards in this District and the rates charged in this District by attorneys with similar skill and experience, the Court finds the requested rates reasonable."); *Sterling v. Farran and Ezedine, LLC*, No.3:10-cv-1119, 2011 WL 219697, at *6 (D. Conn. Jan. 20, 2011) (on default judgment awarding Attorney Blinn hourly rate of $325); *Rivera v. Corporate Receivables, Inc.*, 540 F.Supp.2d 329, 339-40 (D. Conn. 2008) (finding that $325 per hour fee reasonable but adjusting the lodestar figure downward for unnecessary work); *Dinoto v. Rockland Financial Mtg. Co., LLC*, No.3:06-cv-1132, 2007 WL 2460674, at *6 (D. Conn. Aug. 2, 2007) (concluding that "[b]ased on this Court's experience with and knowledge of billing rates of attorneys in this district performing similar work to that of Mr. Blinn, the Court finds that $300/hour is the prevailing billing rate"). Attorney Blinn's requested rate of $325 per hour is in line with prevailing rates, commensurate with the level of skill required to perform properly, and his customary hourly rate.

In addition, Attorney Blinn requested rates of $90 to $180 for his staff who performed clerical and paralegal work. These rates are also in line with prevailing rates and reasonable. *See Bridgeport and Port Jefferson*

*Steamboat Co. v. Bridgeport Authority*, No.3:03-cv-599, 2011 WL 721582, at *5 (D. Conn. Feb. 22, 2011) (assuming that fees of $125 per hour for paralegals and $95 per hour for a legal librarian to be reasonable); M.*K.ex rel. K.*, 578 F.Supp. 2d 425 at 428 (finding that $100 per hour for "paralegal work is a reasonable prevailing rate in this district").

    ii.   *Reasonableness of time spent*

"The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). Here, Attorney Blinn has submitted sufficiently specific and detailed time records indicating the nature of the work performed which this Court has scrutinized. It does not appear that such records include any excessive, redundant or otherwise unnecessary hours. Overall, Attorney Blinn and his staff expended 162.45 hours in preparing the case and facilitating the settlement process which included significant discovery into Defendant's net worth, collection practices in Connecticut, and class certification. The Court therefore finds that the time spent by Attorney Blinn and his staff to be reasonable. Further Attorney Blinn has indicated that his total fees were approximately $39,000 which is in excess of the amount ($32,00) he is seeking. The parties agreed to a reduction in the "lodestar" amount in light of the Defendant's poor financial condition and as a part of the settlement process.

Since the Court has found that (i) the requested hourly rates by Attorney Blinn and his staff to be reasonable; (ii) the time spent by Attorney Blinn and his staff to be reasonable; and (iii) the Parties' discretionary reduction in the "lodestar" amount to $32,000 to be appropriate, the presumptively reasonable fee is appropriately set at $32,000.  See [Dkt. 41, Attach 3, Blinn Fee Affidavit].  Further, the Court sees no reason why the presumptively reasonable fee should be further adjusted downward.

The Court also notes that two similar fee awards have recently been approved in this District in FDCPA cases. *See Silver v. Law Offices Howard Lee Schiff, P.C.*, no.3:09cv912(PCD), 2010 WL 5140851, at *3 (D. Conn. Dec. 16, 2010) (approving hourly rate of $350.00 for each hour worked totaling $25,777.50 in fees); *Ellis v. Solomon & Solomon, P.C.*, No.3:05CV1623 (JBA), 2009 WL 3418231, at *4 (D. Conn. Oct. 20, 2009) (approving an hourly rate of $350.00 for each hour worked and a total award of $34,720.00). Accordingly, the Court finds that attorney fees of $32,000 to be reasonable and appropriate.

    *iii.   Representative Fee*

The Settlement Agreement also includes an award of $2,000 to the class representative in recognition of her efforts on behalf of the class. "Service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by the plaintiff." *Castagna v. Madison Square Garden, L.P.,* No.09-cv-10211(LTS)(HP), 2011 WL 2208614, at *8 (S.D.N.Y. June 7, 2011). This award is consistent with the range of awards made in similar cases. See *Garland*, 2011 WL 6010211, at *13 (approving class representative award of $3,000 in FDCPA class action); *Gross v. Wash. Mut. Bank*, F.A., No.02-cv-4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 8, 2006) (approving $5,000 award for the named plaintiff in settlement of FDCPA action). Therefore, the Court approves the $2,000 class representative fee for the named plaintiff.

V.     Conclusion

The Court hereby finally approves the settlement as set forth in the Settlement Agreement as well as the requested attorney's and class representative fees. For the foregoing reasons, Plaintiff's motion for final approval is GRANTED.

                                        IT IS SO ORDERED.


                                        _____/s/_____
                                        Hon. Vanessa L. Bryant
                                        United States District Judge


Dated at Hartford, Connecticut: January 4, 2012